WILLIAM BLUMENTHAL
General Counsel

MARK MORELLI
mmorelli@ftc.gov
GREGORY A. ASHE
gashe@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue NW, Room NJ2122
Washington, DC 20580
202-326-2601 (Morelli)
202-326-3179 (Ashe)
202-326-2558 (fax)

Local Counsel
RAYMOND E. MCKOWN
rmckown@ftc.gov
CA Bar No. 150975
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4343 (voice)
(310) 824-4380 (fax)

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br>      **Plaintiff,** | :<br>: **Civil No.** CV08-4648-SVW(RZx)<br>: |
| **v.** | :<br>: **Stipulated Final Order for** |
| **JAB VENTURES, LLC,**<br>**JASON BRAILOW, in his individual**<br>**capacity and in his capacity as trustee,**<br>      **Defendants.** | : **Permanent Injunction and**<br>: **Other Equitable Relief**<br>:<br>:<br>: |

_____

        Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), has

commenced this action by concurrently filing its Complaint and this Stipulated

Final Judgment and Order for Permanent Injunction and Other Equitable Relief

("Order"). The Complaint seeks a permanent injunction and other equitable relief

pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 53(b), and charges Defendants JAB Ventures, LLC and Jason Brailow

with unfair and deceptive acts and practices in connection with the sale, offering for

sale, or distribution of dietary supplements.

        Defendants have waived service of the Summons and Complaint. The parties

have agreed to entry of this Order and have requested that the Court enter the same to resolve all matters in dispute in this action.

## FINDINGS

1.     This Court has jurisdiction over the subject matter of this action and all parties hereto.  Venue in the Central District of California is proper.

2.     The activities of Defendants are in or affecting commerce, as defined herein.

3.     The Complaint states a claim upon which relief may be granted against Defendants under Sections 5(a), 12, and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 52, and 53(b), and Sections 907(a) and 917(c) of the  Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a) and 1693o(c), and the Commission has the authority to seek the relief it has requested.

4.     Defendants waive:  (a) all rights to seek review or otherwise challenge or contest the validity of this Order; (b) any claim Defendants may have against the Commission, its employees, representatives, or agents; (c) all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64; and (d) any rights to attorneys' fees that may arise under said provision of law.

5.     The FTC and Defendants stipulate and agree to this Order, without trial or adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the Complaint to the date of entry of this Order.  Defendants do not admit any of the allegations set forth in the Complaint, other than jurisdictional facts, and deny any and all wrongdoing.

6.     This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

7.     Entry of this Order is in the public interest.

**DEFINITIONS**

For purposes of this Order, the following definitions shall apply:

1.     **"Billing Information"** means any data that enables any person to access a consumer's account, such as a credit card, checking, savings, share, or similar account, utility bill, mortgage loan account, or debit card.

2.     **"Clearly and Conspicuously"** means:

a.     in print communications, the message shall be in a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend it, in print that contrasts with the background against which it appears;

b.     in communications disseminated orally, the message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it;

c.     in communications made through an electronic medium (such as television, video, radio, and interactive media such as the Internet, online services and software), the message shall be presented simultaneously in both the audio and visual portions of the communication.  In any communication presented solely through visual or audio means, the message may be made through the same means in which the communication is presented.  In any communication disseminated by means of an interactive electronic medium such as software, the Internet, or online services, a disclosure must be unavoidable and presented prior to the consumer incurring any financial obligation.  Any audio message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it.  Any visual message shall be of a size and shade, with a degree of contrast to the background against which it appears and shall appear on the screen for a duration and in a location, sufficiently noticeable for an ordinary consumer to read and

3

comprehend it; and

       d.     regardless of the medium used to disseminate it, the message shall be in understandable language and syntax.  Nothing contrary to, inconsistent with, or in mitigation of the message shall be used in any communication.

    3.    **"Commerce"** means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

    4.    **"Competent and Reliable Scientific Evidence"** means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

    5.    **"Defendants"** means JAB Ventures, LLC, its successors and assigns, and Jason Brailow.

    6.    **"Endorsement"** means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness, or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the Defendants, even if the views expressed by that party are identical to those of the Defendants.

    7.    **"Food"** means:

       a.     articles used for food or drink for man or other animals;

       b.     chewing gum; and

       c.     articles used for components of any such article.

8.    **"Drug"** means:

a.    articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them;

b.    articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals;

c.    articles (other than food) intended to affect the structure or any function of the body of man or other animals; and

d.    articles intended for use as a component of any article specified in clause (a), (b), or (c); but does not include devices or their components, parts, or accessories.

9.    **"Device"** means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is:

a.    recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them;

b.    intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or

c.    intended to affect the structure or any function of the body of man or other animals, and which does not achieve any of its principal intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

10.    **"JAB Ventures"** means JAB Ventures, LLC and its successors and assigns.

5

11.    **"Negative Option Feature"** means, in an offer or agreement to sell or provide any product or service, a provision under which the consumer's silence or failure to take an affirmative action to reject products or services or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer. Agreements with negative option features include, but are not limited to:  (i) free or introductory price trial offers in which the consumer receives a product or service for free or at a nominal or introductory price for an initial period and will incur an obligation to pay or pay a greater amount for the product or service if he or she does not take affirmative action to cancel, reject, or return the product or service before the end of that period; (ii) continuity plans in which, subsequent to the consumer's agreement to the plan, the seller or provider automatically ships products to a consumer unless the consumer notifies the seller or provider within a certain time not to ship the products; and (iii) automatic renewal plans in which the seller or provider automatically renews the agreement and charges the consumer unless the consumer cancels before the renewal.

12.    "**Preauthorized Electronic Fund Transfer**," as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a (9), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

## I.  PROHIBITION ON MISREPRESENTATIONS

**IT IS THEREFORE ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any dietary supplement, food, drug, device, or health-related program or service, or of any

product or service by means of a negative option feature, are hereby permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

      A.    That a product or service is offered on a "free," "trial," or "no obligation" basis, or words of similar import, denoting or implying the absence of any obligation on the part of the recipient of the offer to affirmatively act in order to avoid charges if, in fact, a charge will be assessed pursuant to the offer unless the consumer takes affirmative action to cancel;

      B.    The amount that a consumer will be charged or billed;

      C.    That a consumer will not be charged or billed;

      D.    The timing or manner of any charge or bill (including but not limited to the date of the charge and whether it will be a credit card charge or a checking account debit);

      E.    The length of any trial period that consumers receive before being charged or billed; and

      F.    Through, among other things, mailings, email, billings, credit card charges, and checking account debits, that a consumer purchased or agreed to purchase a product or service, or that a transaction has been authorized by a consumer.

## II.  REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in

connection with the advertising, promoting, offering for sale, or sale of any product or service, are hereby permanently restrained and enjoined from failing to clearly and conspicuously disclose, before consumers are asked to pay money, submit consideration, or reveal billing information: all fees and costs; all material restrictions, limitations, or conditions applicable to the purchase, receipt, or use of the product or service that is the subject of the offer (including any promotion associated with free products or services, or products or services available on a trial basis); and all material terms and conditions of any offer with a negative option feature, including but not limited to:

A.      The dollar amount of the first payment and when it will be charged, withdrawn, or become due; the dates or frequency (*e.g.*, monthly, quarterly) of all subsequent charges or payment(s); and the dollar amount or range of costs of all subsequent charges or payments;

B.      If a withdrawal will be made or a charge assessed at the end of a trial period unless the consumer cancels:  this fact; when the trial period begins; the length of the trial period; the specific steps and means by which a cancellation request must be submitted; and the date by or time period within which a cancellation request must be received to avoid a charge;

C.      If products are automatically shipped to a consumer or a membership, subscription, or agreement for products or services that are offered on a periodic basis is automatically renewed unless the consumer provides notification within a certain time not to ship or renew:  this fact; the length of the subsequent renewal period; the manner in which a notice not to ship or renew must be submitted; the date by or time period within which a notice not to ship or renew must be received to avoid shipment or renewal (*e.g.,* two weeks after the consumer is advised of an upcoming shipment); and the telephone number, email address, or street address to

which such a notice must be directed; and

D. All material conditions, limitations and restrictions on the ability of the consumer to use any product or service that is offered "free," "risk-free," with "no obligation," or as discounted or reduced in price, or words of similar import denoting or implying the absence of any obligation on the part of the recipient of such offer to pay or pay a greater amount for such product or service or to take affirmative action to avoid incurring payment or increased payment obligations, whether such product or service is the subject of the offer to the consumer or such product or service is offered to a consumer who accepts an offer for other products or services.

### III. EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any product or service, are hereby permanently restrained and enjoined from directly or indirectly using billing information to obtain payment in connection with the marketing of any product or service, without the express informed consent of the consumer, which shall include express informed consent to be charged for the product or service using a specified billing account, and the clear and conspicuous disclosure of the information identified in Section II, above, in close proximity to the consumer's express consent to purchase such products or services. In connection with an offer or agreement with a negative option feature, the following requirements must be met to evidence express informed consent:

A.     One of the following means must be used to evidence that the consumer has given express informed consent:

1.     Obtaining the consumer's express written authorization to purchase the product or service that is the subject of the transaction and the consumer's authorization to assess a charge against a specified account for payment. Such authorization must include the consumer's signature (the term "signature" includes a verifiable electronic or digital form of signature, to the extent such form of signature is recognized as a valid signature under applicable federal law or state contract law); or

2.     Obtaining the consumer's express oral authorization to purchase the product or service that is the subject of the transaction and the consumer's authorization to assess a charge against a specified account for payment that is audio-recorded, as follows:

a.     the recording must evidence that the consumer, during that transaction, at a minimum, has provided the last four (4) digits of the account number to be charged;

b.     the recording must evidence that the disclosure requirements of Section II, above, have been complied with;

c.     the recording must include the entirety of the transaction;

d.     the recording can be identified and located by either the consumer's name or telephone number; and

e.     a copy of the recording is provided upon request to the consumer, the consumer's bank, credit or debit card company or other billing entity, state attorney general or consumer protection agency, and the Commission.

B.      For any transaction involving a service, within the lesser of ten days after the date of the transaction or half the time of any trial period, the consumer must be sent written confirmation of the transaction, identified in a clear and conspicuous manner on the outside of the envelope, via first class mail that includes all the information that is required to be disclosed pursuant to Section II, above, and a clear and conspicuous statement of the procedures by which the consumer can cancel or obtain a refund;

C.      For any transaction involving a product, the first product shipment must contain written confirmation of the transaction that includes all of the information that is required to be disclosed pursuant to Section II above, and a clear and conspicuous statement of the procedures by which the consumer can cancel or obtain a refund; and

D.      At least thirty (30) days prior to renewing a consumer's membership, subscription, or agreement to purchase for any service (in the case of a membership, subscription, or agreement whose term is six months or longer) and prior to the submission for payment of a consumer's billing information for such services, a consumer must be sent written confirmation of such renewal, identified in a clear and conspicuous manner on the outside of the envelope, via first class mail, that includes all of the information that is required to be disclosed pursuant to Subsections II.A, B, and D of this Order above, and a clear and conspicuous statement of the procedures by which the consumer can cancel such renewal.

## IV.  PROHIBITIONS RELATING TO REFUNDS AND CANCELLATIONS

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity,

11

who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any product or service, are hereby permanently restrained and enjoined:

A.     From failing to disclose, clearly and conspicuously, before consumers are asked to pay money, submit consideration, or reveal billing information:   (1) if a representation is made about a refund or cancellation policy, all material terms and conditions of such policy; or (2) if there is a policy of not making refunds or cancellations, this fact;

B.     If a policy allowing consumers to cancel or obtain a refund has been disclosed to the consumer, from failing to honor any request that complies with such policy; and

C.     From misrepresenting, or assisting others in misrepresenting, expressly or by implication, the terms and conditions of any refund or cancellation policy or policies, including but not limited to, that consumers who accept an offer can easily cancel to avoid the assessment of a charge.

## V.  COMPLIANCE WITH THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any product or service, are hereby permanently restrained and enjoined, in connection with any consumer who purchases any product or service subsequent to the date of this Order and who uses a debit card or other means of electronic funds transfer, from:

A.     Failing to obtain written authorization for preauthorized electronic

12

fund transfers from a consumer's account before initiating any preauthorized electronic fund transfer, as required by Section 907(a) of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as they may hereafter be amended; and

B.     Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain written authorization for a preauthorized electronic fund transfer, as set forth in Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as it may hereafter be amended.

## VI.  FALSE WEIGHT LOSS REPRESENTATIONS PROHIBITED

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, labeling, manufacturing, promoting, offering for sale, or sale of any dietary supplement, food, or non-prescription drug or device, are hereby permanently restrained and enjoined from making any representation, expressly or by implication, including through the use of endorsements or product names, that such product:

A.     Causes substantial weight loss for all users; or

B.     Causes permanent weight loss.

## VII.  REPRESENTATIONS PROHIBITED UNLESS TRUE AND SUBSTANTIATED

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, labeling, manufacturing, promoting, offering for sale, or sale of any dietary supplement, food, drug, device, or health-related program or service, are hereby permanently restrained and enjoined from making any representation, expressly or by implication, including through the use of endorsements or product names:

    A.    That any such product, service, or program:

        1.    causes weight loss or any specified amount of weight loss, including but not limited to weight loss with little effort;

        2.    reduces or eliminates fat;

        3.    reduces or curbs appetite;

        4.    increases metabolism;

        5.    causes permanent weight loss; or

        6.    does not contain stimulants;

or

    B.    Regarding the health benefits, performance, efficacy, safety, or side effects of any such product, service, or program;

unless, the representation is true, not misleading, and, at the time the representation is made, Defendants possess and rely upon competent and reliable scientific evidence that substantiates the representation.

14

# VIII.  FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that:

A.     Nothing in this Order shall prohibit Defendants from making any representation for any drug that is permitted in labeling for such drug under any tentative final or final standard promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration;

B.     Nothing in this Order shall prohibit Defendants from making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990; and

C.     Nothing in this Order shall prohibit Defendants from making any representation for any device that is permitted in labeling for such device under any new medical device application approved by the Food and Drug Administration.

# IX.  MONETARY RELIEF

**IT IS FURTHER ORDERED** that Judgment is hereby entered against Defendants, jointly and severally, in the amount of seven million eight hundred three thousand four hundred twenty-five dollars ($7,803,425), which is the amount of injury that the Federal Trade Commission alleges was caused by Defendants. However, subject to the conditions in Section X of this Order, this judgment shall be suspended based upon the payment by Defendants of four hundred sixty-six thousand dollars ($466,000), which Defendants have previously turned over to their attorney, who is holding the entire sum in escrow.  Within five (5) business days after entry of this Order, Defendants' attorney shall transfer the escrowed payment to the FTC in the form of a wire transfer or certified or cashier's check made payable to the FTC.

A.     All funds paid pursuant to this Order shall be used for equitable relief,

including but not limited to consumer redress and any attendant expenses for the administration of any redress funds.  In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the FTC may apply any remaining funds for such other equitable relief, including, but not limited to, consumer information remedies, as the FTC determines to be reasonably related to the practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited to the U.S. Treasury as equitable disgorgement.  Defendants shall have no right to challenge the FTC's choice of remedies or the manner of distribution.

B.     While Defendants do not admit any of the facts alleged in the Complaint other than jurisdictional facts, Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case.  Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).

C.     The judgment entered pursuant to this Section IX is equitable monetary relief, solely remedial in nature, and not a fine, penalty, punitive assessment or forfeiture.

D.     Defendants acknowledge and agree that any money paid pursuant to this Order is irrevocably paid to the FTC for purposes of settlement between the FTC and Defendants, and Defendants relinquish all rights, title, and interest to such money.

E.     Upon request, Defendants are hereby required, in accordance with 31

16

U.S.C. § 7701, to furnish to the FTC their tax identification numbers, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

F.     Pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning any Defendant to the FTC, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

G.     JAB Ventures and Jason Brailow shall provide the Commission, or its agent, within thirty (30) days of such a request, the name, last known address, telephone number, e-mail address, date of purchase, name of product purchased, total amount paid to JAB Ventures and Jason Brailow, amount of any full or partial refund, credit card, debit card, or bank account information, and the complete file record, including computer records and correspondence for each consumer who paid JAB Ventures and Jason Brailow or any entity owned or controlled, in full or in part, by JAB Ventures and Jason Brailow, for any product identified in the Complaint and marketed or sold by JAB Ventures and Jason Brailow from January 2005 through the date of entry of this Order, and any further information the Commission deems necessary to effectuate any redress program for consumers.  In the event that information identified in this Section IX is not within the custody, control, or possession of Defendants, then Defendants must cooperate with the Commission in any action or proceeding to obtain this information.

## X.

## RIGHT TO REOPEN

**IT IS FURTHER ORDERED** that the FTC's agreement to this Order and the Court's approval are expressly premised on the truthfulness, accuracy and completeness of the financial statements and supporting documents submitted to the

FTC, which are identified in Attachment A to this Order.  The Defendants have previously attested to the truth, accuracy, and completeness of those financial statements and supporting documents.  If, upon motion by the FTC, the Court finds that the financial statements or supporting documents of any Defendant contain any material misrepresentation or omission, then the suspension of the judgment set forth in Section IX shall be vacated and the full amount of the judgment shall immediately become due and payable, less any payments already made; *provided, however,* that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, *provided further*, that proceedings instituted under this provision would be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any other proceedings that the FTC may initiate to enforce this Order.  For purposes of this Section X,  Defendants waive any right to contest any of the allegations in the Complaint.

## XI.  MONITORING TO ENSURE COMPLIANCE WITH THE ORDER

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any product or service, are hereby permanently restrained and enjoined from failing to take all reasonable steps sufficient to monitor and ensure that all Defendants' agents, representatives, employees, and contract telemarketers comply with the requirements of this Order.  Such reasonable steps shall include, but are not limited to:

A.    Establishing and following a procedure for receiving and responding to consumer complaints that allege conduct that constitutes a violation of the FTC Act or this Order;

B.    Ascertaining the number and nature of consumer complaints in which each employee or independent contractor is involved;

C.    Promptly and fully investigating any consumer complaint; and

D.    Creating and retaining records demonstrating compliance with this Section XI, as required by Section XV, including but not limited to, copies of all procedures for receiving and responding to consumer complaints, all documents relating to investigations of consumer complaints, and all documents demonstrating how each consumer complaint is responded to or addressed;  *provided, however*, that this subsection does not authorize or require any action that violates any federal, state, or local law.

## XII.  PROHIBITION ON COLLECTION OF PAYMENTS AND DISCLOSURE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and their agents, servants, salespersons, employees, and those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any dietary supplement, are hereby permanently restrained and enjoined from:

A.    Causing any withdrawal, assessment of a fee, or payment to be made against any consumer account, or otherwise causing collection of, or attempts to collect, payment, directly or indirectly, from a consumer, for any order for any product identified in the Complaint and offered or provided to consumers, where

the purported authorization for such order occurred prior to the effective date of this Order; and

B.      Selling, renting, leasing, transferring or otherwise disclosing the name, address, birth date, telephone number, email address, Social Security number, credit or debit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom such information was obtained in connection with activities alleged in the Complaint; *provided, however*, that such financial or identifying personal information may be disclosed to a law enforcement agency or as required by any law, regulation, or court order.

## XIII.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.      Within ten (10) days of receipt of written notice from a representative of the Commission, JAB Ventures and Jason Brailow shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such Defendant's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2.      posing as consumers and suppliers to JAB Ventures, Jason Brailow, their employees, or any other entity managed or controlled in whole or in part by JAB Ventures or Jason Brailow, without the necessity of identification or prior notice; and

C.     JAB Ventures and Jason Brailow shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present;

*Provided, however*, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## XIV.  COMPLIANCE REPORTING BY DEFENDANTS

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.     For a period of three (3) years from the date of entry of this Order:

1.     Jason Brailow shall notify the Commission of the following:

a.     any changes in his residence, mailing addresses, and telephone numbers within ten (10) days of the date of such change;

b.     any changes in his employment status (including self-employment), and any change in his ownership in any business entity, within ten (10) days of the date of such change.  Such notice shall include the name and address of each business that he is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of his duties and responsibilities in connection with the business or employment; and

c.     any change in his name or use of any aliases or fictitious names; and

2.     JAB Ventures and Jason Brailow shall notify the Commission of

any changes in the corporate structure of JAB Ventures or any business entity that Jason Brailow directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, provided that, with respect to any proposed change in the corporation about which Defendants learn of less than thirty (30) days prior to the date such action is to take place, Defendants shall notify the Commission as soon as is practicable after obtaining such knowledge;

B.  One hundred eighty (180) days after the date of entry of this Order, JAB Ventures and Jason Brailow each shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

1.      for Jason Brailow:

a.      his then-current residence address, mailing addresses, and telephone numbers;

b.      his then-current employment and business addresses and telephone numbers, a description of the business activities of each such employer or business, and his title and responsibilities for each such employer or business; and

c.      any other changes required to be reported under subparagraph A of this Section XIV;

2.      for all Defendants:

a.      a copy of each acknowledgment of receipt of this Order

22

obtained pursuant to Section XVI; and

b.      any other changes required to be reported under subparagraph A of this Section XIV;

C.      For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the Commission to:

Associate Director, Division of Enforcement
Federal Trade Commission
601 New Jersey Avenue, N. W.
Washington, D.C. 20580
RE:  FTC v. JAB Ventures, LLC et al.

D.      For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with Defendants or, at their request, with their counsel.

## XV.  RECORD KEEPING

**IT IS FURTHER ORDERED** that, for a period of six (6) years from the date of entry of this Order, in connection with any business where JAB Ventures or Jason Brailow is the majority owner of the business or directly or indirectly manages or controls the business, JAB Ventures and Jason Brailow and their agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.      Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.      Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date

23

upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.    Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.    Complaint and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

E.    Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.    All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of all procedures for receiving and responding to consumer complaints, all documents relating to investigations of consumer complaints, and all documents demonstrating how each consumer complaint was responded to or addressed, as required by Section XI; acknowledgments of receipt of this Order, as required by Section XVI; and all reports submitted to the FTC pursuant to Section XIV.

## XVI.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

A.    JAB Ventures must deliver a copy of this Order to all principals, officers, directors, and managers.  JAB Ventures also must deliver copies of this Order to all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Order.  For current personnel, delivery shall be within five (5) days of service of this Order upon JAB Ventures.  For new

personnel, delivery shall occur prior to them assuming their responsibilities;

B.     Jason Brailow as control person:  For any business entity that Jason Brailow controls, directly or indirectly, or in which he has a majority ownership interest, Jason Brailow must deliver a copy of this Order to all principals, officers, directors, and managers.  Jason Brailow must also deliver copies of this Order to all employees, agents, and representatives who engage in conduct related to the subject matter of the Order.  For current personnel, delivery shall be within five (5) days of service of this Order upon Jason Brailow.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

C.     Jason Brailow as employee or non-control person:  For any business where Jason Brailow is not a controlling person of a business but otherwise engages in conduct related to the subject matter of the Order, Jason Brailow must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct; and

D.     JAB Ventures and Jason Brailow must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section XVI.

## XVII.  ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that JAB Ventures and Jason Brailow, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XVIII.  COSTS AND ATTORNEYS' FEES

**IT IS FURTHER ORDERED** that each party shall bear its own costs and attorneys' fees incurred in connection with this action.

# XIX.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

matter for purposes of construction, modification, and enforcement of this Order.

Date: _____

                                _____
                                Mark Morelli
                                Attorney for Plaintiff
                                FEDERAL TRADE COMMISSION

Date: _____

                                _____
                                Jason Brailow, individually, and as an
                                officer of Defendant JAB Ventures,
                                LLC

APPROVED AS TO FORM:

Date: _____

                                _____
                                William I. Rothbard
                                Attorney for Defendants

**IT IS SO ORDERED.**

Date: August 20, 2008

                                Honorable Stephen V. Wilson
                                United States District Judge

26